JODI LINKER
Federal Public Defender
Northern District of California
SAMANTHA JAFFE
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:	(510) 637-3500
Facsimile:	(510) 637-3507
Email:	Samantha_Jaffe@fd.org

Counsel for Defendant Davis

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| UNITED STATES OF AMERICA, | Case No.: CR–MJ-70989-MAG DMR |
|---|---|
| Plaintiff, | **SUPPLEMENT TO MOTION FOR BAIL REVIEW** |
| v. | |
| FREDDIE LEE DAVIS, III | Court:	Courtroom 4, 3rd Floor |
| Defendant. | Hearing Date:	October 30, 2023 |
| | Hearing Time:	10:30 a.m. |

**PROCEDURAL HISTORY**

This Court initially released Mr. Davis on August 24, 2023. Dkt. No. 6. This Court remanded Mr. Davis into custody on August 31, 2023, based on the United States' renewed motion for detention, for violating his conditions of release: specifically, for continuing to be in contact with his partner and co-defendant, in violation of this Court's stay-away order (which only allowed contact to hand off child-care responsibilities). Dkt. No. 20.

The defense requested that Mr. Davis' bail hearing be reopened, via motion, on September 25, 2023. Dkt. No. 36. The government filed a response in opposition on October 2, 2023, noting that there were numerous phone calls between Mr. Davis and his co-defendant, in violation of this Court's

stay-away order, while Mr. Davis was in custody. Dkt. No. 37. At the hearing on October 3, 2023, this Court continued the hearing until October 30, 2023, and ordered that the calls be produced to the defense. Dkt. No. 38.

The United States produced the calls on October 10, 2023. The software required to listen to the calls required additional installation, and so the defense was able to start reviewing the calls on October 12, 2023. The defense team has now reviewed the calls, and this supplement to the initial motion follows.

## ARGUMENT

### 1.  The government's response

First: it should be noted that because Mr. Davis was in custody and bond had been revoked, he was not actually in violation of this Court's orders when making these calls. However, counsel and Mr. Davis understand that Ms. Malepeai was still under this Court's orders, and this conduct was in violation of that.

As the government noted in their response, there are calls to Ms. Malepeai on multiple phone numbers. And there are calls to Ms. Malepeai from multiple pin numbers. After reviewing the calls, and speaking with Mr. Davis, the calls from other inmates' pin numbers are not an attempt to be sneaky: Mr. Davis borrowed other folks' pins when he was out of money or minutes on his own. He discusses being out of minutes/putting money on his phone with Ms. Malepeai, and his family, throughout the calls that have been produced. This is borne out by the fact that there are also very few of these calls: six total, out of the 283 calls that were produced.

The government is correct, however, that Mr. Davis and Ms. Malepeai knew they were not supposed to be speaking, and used another phone. The phone number identified as Ms. Malepeai's "secondary" number by the government is actually a phone of Mr. Davis'. She started to use it because they knew that the parties were aware of her phone number, and she and Mr. Davis wanted to communicate. However, Ms. Malepeai's "tertiary" phone number was not some additional attempt to be sneaky. Mr. Davis' old phone stopped working (this is discussed in some of the calls) and so she obtained another free government phone to use to communicate with him.

**2.    The content of the calls**

Again: counsel, and Mr. Davis, understand that he and Ms. Malepeai should not have been in communication, and that their communications violate the letter of Ms. Malepeai's release conditions and the spirit of what this Court was trying to do as far as Mr. Davis. However, counsel respectfully believes that the content of the calls shows that this Court has nothing to be concerned about with Mr. Davis and Ms. Malepeai communicating.

The vast majority of the calls between Mr. Davis and Ms. Malepeai are exactly the kind of calls one would expect from two people who love each other, are in a relationship, have a child together, and have another on the way. They are the calls of parents who are in family court and trying to keep custody of their daughter, who are juggling social worker visits and three different attorneys each (dependency, state, and federal). They are the calls of people trying to figure out the logistics of where Ms. Malepeai can live. And they are the calls of people who are separated because one is in custody, miss each other, and do not want to be separated.

On the calls, Mr. Davis and Ms. Malepeai talk about missing each other. They talk about how Ms. Malepeai is feeling (tired). They talk about her work. They talk about Mr. Davis hoping he still has a job if he gets out. They talk about how hard being in custody is for Mr. Davis. They talk about transportation subsidies from the county for their daughter. They talk about Ms. Malepeai's financial situation. Mr. Davis talks about missing his daughter, and wanting to be home. On many calls Ms. Malepeai puts their daughter on the phone to speak to her father. They both talk about how sad they are that Mr. Davis is in custody. They talk about their joint phone bill, how it has not been paid, and how Mr. Davis' brother can maybe pay it (normally, the phone bill is Mr. Davis' responsibility to pay when he is not in custody). They talk about their dependency social worker and her visits, the family court case, and the family court hearing that happened while Mr. Davis was in custody. They talk about childcare issues and the pros and cons of having their daughter with Mr. Davis' mother versus daycare. They talk about speaking to their family court attorneys, state attorneys, and federal attorneys (often it is not clear which attorney they are talking about, it seems to be dependency attorneys most often). At one point they talk about Ms. Malepeai's paperwork or getting rid of paperwork, defense counsel believes that is unrelated to this case and is about Ms. Malepeai needing

MOTION TO REOPEN MATTER OF BAIL
*DAVIS*, 2023–MJ-70989-MAG DMR

3

|   |   |
|---|---|
| 1 | to deal with a suspended drivers' license or DUI so that she can drive and transport their daughter. |
| 2 | They talk about a rapper Mr. Davis follows (who is in custody) and whether he (the rapper, YNW |
| 3 | Melly) got out (he did not). |
| 4 |      On four of the calls they fight. On many, if not most of the calls, one or both of them cries. On |
| 5 | one call Ms. Malepeai asks Mr. Davis if he has a baby name picked out for their second child. They |
| 6 | gossip about their families and acquaintances. They talk about wanting to get married. They talk |
| 7 | about the logistics for jail visits between Mr. Davis and their daughter. |
| 8 |      On one call, Mr. Davis asks Ms. Malepeai to do him a favor. He asks if she has old |
| 9 | messages/emails about something (it is not clear what). He tells Ms. Malepeai that she needs to send |
| 10 | those "to him" (not Mr. Davis, someone else, seemingly) ASAP. Again, it is not clear what is being |
| 11 | discussed, or who anything needs to be sent to. It is not clear if it is connected to this case. On one |
| 12 | call Mr. Davis and Ms. Malepeai discuss her being threatened to have their child taken away (unclear |
| 13 | if this in regard to the dependency case, or something else) and that she should report it to "him" |
| 14 | (unclear who that is in reference to). On one call Mr. Davis asks if Ms. Malepeai has "done it" |
| 15 | (unclear what this is in reference to, but sounds like getting paperwork done). There are a few calls |
| 16 | where Ms. Malepeai talks about telling "him" "the full story" and Mr. Davis asks what "he" said |
| 17 | about whatever Ms. Malepeai was supposed to tell "him". Again, it is unclear who or what these are |
| 18 | in reference to. |
| 19 |      They do, sometimes, actually mention the federal case: Ms. Malepeai, on one call, mentions |
| 20 | that her dependency lawyer thinks there should not be a federal stay away order. Ms. Malepeai also |
| 21 | says on one call that the social worker for the dependency case doesn't understand why there is a |
| 22 | federal case. On the same call Ms. Malepeai says that her attorney (not clear if it's federal or state or |
| 23 | dependency) told her not to talk to the social worker about the case. On one call Mr. Davis tells Ms. |
| 24 | Malepai when his next federal court date is. Mr. Davis says that he wants to get out. Ms. Malepeai |
| 25 | says she also wants him to get out. In calls from early-mid September, starting after Mr. Davis was |
| 26 | remanded, they talk about the fact that they were under surveillance. They ask each other if they have |
| 27 | talked to their respective attorneys (again, not always clear if it's federal, state, or dependency |
| 28 | attorneys). On one call Mr. Davis tells Ms. Malepeai that "they" (presumably either the state or |

federal prosecutor) are bringing up old stuff. Ms. Malepeai tells Mr. Davis on two calls that they are not allowed to be around each other, even if he gets out. These discussions are on a fraction of the 283 calls that have been produced, and happen as small parts of larger conversations about their daughter and their families.

**CONCLUSION**

Defense counsel and Mr. Davis understand that Mr. Davis needs to comply with this Court's orders, and that he failed to do so, which resulted in his remand. Mr. Davis was also instructed, at and after the last hearing, to not, under any circumstances, contact Ms. Malepeai anymore via phone, even though he is not currently subject to bond conditions.

However, in spite of that breach of the Court's trust, Mr. Davis' continued custody in this case is unwarranted. He has now spent nearly two months in custody, away from his daughter, after fighting for a year to get her back into his care. He has only been able to see her once, because of difficulties in scheduling visits at Santa Rita. He has spent nearly two months away from his partner, who is pregnant with his second child. There is no evidence on these calls that Mr. Davis and Ms. Malepeai's relationship presents any kind of danger to either of them or to the community. There is no evidence on these calls that reflects any desire by either defendant to avoid responsibility or flee from these charges. And there is no evidence on these calls, based on the defense review, that reflect that either defendant was trying to obstruct justice in their limited discussions of this case.

The defense request remains for this Court to release Mr. Davis. The defense also respectfully requests that this Court consider changing the terms of the stay-away order. These individuals need to be able to co-parent and to raise two children together. As noted in the initial motion, and after continued conversations with Mr. Davis' dependency attorney, the family court's intent was for them to live and parent together. Restricting their ability to do that animates concerns under *United States v. Wolfchild*, 699 F.3d 1082 (9th Cir. 2012). A slightly different type of order, which bars Mr. Davis and Ms. Malepeai from discussing this case outside of the presence of their attorneys, might be appropriate here.

Accordingly, defense counsel respectfully requests that this Court re-release Mr. Davis, and consider adjusting the terms of release to allow contact so that Mr. Davis and Ms. Malepeai can

successfully co-parent while juggling a new baby, and three separate cases each.

Dated:    October 27, 2023                    Respectfully submitted,

                                              JODI LINKER
                                              Federal Public Defender
                                              Northern District of California

                                                     /S
                                              _____
                                              SAMANTHA JAFFE
                                              Assistant Federal Public Defender