JODI LINKER
Federal Public Defender
Northern District of California
SAMANTHA JAFFE
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:   (510) 637-3507
Email:        Samantha_Jaffe@fd.org


Counsel for Defendant Davis


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** MJ 23–70989 MAG |
| Plaintiff, | **APPEAL TO THE DISTRICT COURT** |
| v. | **Court:**          TBD |
| FREDDIE LEE DAVIS, III | **Hearing Date:**   TBD |
| Defendant. | **Hearing Time:**   TBD |

**TO:  ISMAEL RAMSEY, UNITED STATES ATTORNEY;**
    **ERIC CHENG, ASSISTANT UNITED STATES ATTORNEY;**

        PLEASE TAKE NOTICE that Defendant Freddie Lee Davis, III, by and through his attorney,

Samantha Jaffe, files this appeal to the district court from the denial of his motion to reopen bail

entered by the Honorable Donna M. Ryu on October 30, 2023, pursuant to 18 U.S.C. § 3145(b).

        This appeal is based upon the attached statement of facts and memorandum of points and

authorities, the files and records in this case, and any and all other materials that may come to this

Court's attention prior to or during the hearing of this motion. The defense respectfully requests that

this matter be assigned to a district judge, that a response from the government be ordered, and that a

hearing date be set as soon as is practicable.

APPEAL OF DENIAL OF BAIL TO THE DISTRICT COURT
*DAVIS*, 2023–70989 MAG

1

## PROCEDURAL HISTORY

2

Mr. Davis and his co-defendant, Ms. Malepeai, are charged with wire fraud and aggravated

3

identity theft, in violation of 18 U.S.C. § 1343 and § 1028A. Dkt. No. 1. As alleged in the complaint,

4

this stems from a purse snatch in the San Leandro Costco parking lot on June 17, 2021, and the fraud

5

charges are premised on a $98.78 charge at Foot Locker in San Leandro on June 19, 2021. Dkt. No. 1

6

at 3-4.

7

Mr. Davis was originally released, over the government's objection, on August 24, 2023. Dkt.

8

No. 6. A condition of release was that Mr. Davis and his co-defendant, Ms. Malepeai, not have

9

contact other than to exchange their daughter. Dkt. Nos. 8, 10. The court remanded Mr. Davis into

10

custody on August 31, 2023, based on the government's renewed motion for detention for violating

11

his conditions of release: specifically, for continuing to be in contact with his partner and co-

12

defendant, in violation of the court's stay-away order (which allowed contact only to hand off child-

13

care responsibilities). Dkt. No. 20. Mr. Davis' co-defendant, Ms. Malepeai, was not remanded into

14

custody, despite her also violating this condition of release. Ms. Malepeai is set to be induced, to give

15

birth to her and Mr. Davis' second child, on Saturday, December 2, 2023.

16

The defense moved to reopen Mr. Davis' bail hearing on September 25, 2023. Dkt. No. 36. The

17

government filed a response in opposition on October 2, 2023, noting that there were numerous

18

phone calls between Mr. Davis and his co-defendant, in violation of this Court's stay-away order,

19

while Mr. Davis was in custody. Dkt. No. 37. At the hearing on October 3, 2023, this Court continued

20

the hearing until October 30, 2023, and ordered that the calls be produced to the defense. Dkt. No. 38.

21

The government produced the calls on October 10, 2023. The defense filed a supplement to the

22

initial motion for bail review on October 27, 2023. Dkt. No. 44. The government filed a supplement

23

to its response to the motion on October 29, 2023. Dkt. No. 47. At the hearing on October 30, 2023,

24

the court detained Mr. Davis. This appeal follows.

25

## INTRODUCTION

26

Mr. Davis and Ms. Malepeai are co-defendants. They are also co-parents to a four-year-old and

27

soon to be co-parents to a newborn (Ms. Malepeai is set to be induced on Saturday, December 2,

28

2023). They have been involved in family court proceedings regarding their four-year-old daughter

1    for over eighteen months. It should be noted that Mr. Davis, until he was remanded into custody in

2    this case, was in perfect compliance with his family court requirements. He had not missed a court

3    hearing. He had completed domestic violence courses and parenting courses. He was continuing to

4    participate in a fatherhood group, as well as individual therapy. Mr. Davis demonstrated, via his

5    actions throughout the family court case for over a year and a half, both the weight he places on

6    fatherhood, and his ability to comply with court conditions.

7        While in custody for the last three months, Mr. Davis missed a family court hearing. He missed

8    social work visits. He is missing his fatherhood group. He is missing out on parenting his daughter.

9    And, most importantly, he will miss the birth of his second child. These circumstances make the

10   conditions of his confinement extraordinarily severe, especially for a non-presumption case where the

11   alleged conduct predates the complaint by over two years and for an individual with limited

12   misdemeanor criminal history and no prior felony convictions.

13                                              **ARGUMENT**

14       1.      **Mr. Davis is not a flight risk or a danger to the community.**

15       Mr. Davis, and his co-defendant Ms. Malepeai, are charged with wire fraud and aggravated

16   identity theft, stemming from a purse snatch, and subsequent usage of a credit card, in June 2021, in

17   which they are alleged to be two of four participants. Dkt. No. 1. The other two individuals are not

18   being charged federally.

19       This is not a presumption case. In addition, the government could not, and cannot, meet its

20   burden to show that Mr. Davis is a flight risk by a preponderance of the evidence. 18 U.S.C.

21   3142(f)(2); *United States v. Motamedi*, 767 F.2d 1403, 1206 (9th Cir. 1985). Mr. Davis is a life-long

22   resident of the Bay Area with no prior felony convictions, no history of failures to appear,

23   employment history, and family ties to this community: his mother, father, grandmother, partner, and

24   daughter are all here, and have all been in court to support him. Dkt. No. 16.

25       Further, the government could not, and cannot, meet its burden to show that Mr. Davis is a

26   danger to the community by clear and convincing evidence. 18 U.S.C. 3142(f)(2)(B).  The charged

27   conduct is from June 17, 2021, more than two years before Mr. Davis' and Ms. Malepeai's arrests in

28   this case. In the intervening time, in spite of the over 100,000 pages of discovery the government has

1    produced, there is nothing that ties Mr. Davis to any other criminal activity connected to the incident

2    underlying this case. Further, contrary to the assumptions made at the initial appearance, the state

3    protective order that exists between Mr. Davis and Ms. Malepeai allows peaceful contact. In fact, the

4    state order was amended on October 13, 2023, to make that clear because the original order, from

5    October of 2022 (which was relied on by pretrial and the court at the initial appearance) erroneously

6    had not.. *See* Exhibit A, Correct Protective Order, Misdemeanor Judgment and Commitment

7    (showing peaceful contact was allowed in 2022); Exhibit B, Emails from State Public Defender

8    documenting that the original CPO was issued in error.

9              **2.      Mr. Davis can follow court orders and should be released.**

10          At both hearings on the motion to reopen bail, the magistrate's concern centered on the idea

11   that, because Mr. Davis had continued to be in contact with Ms. Malepeai after his release and after

12   he was in custody, the court could not trust him to follow its orders, and he had to be detained. 18

13   U.S.C. § 3148(b)(2)(B). But despite similar concerns applying to Ms. Malepeai—she was also in

14   contact with Mr. Davis, in violation of the court's order, but was not remanded into custody, even

15   after the calls showing that she continued to be in contact with him in jail came to light—Ms.

16   Malepeai has remained out on bond. Just as Ms. Malepeai has shown that she is amenable to

17   supervision, despite violating the no-contact order, so is Mr. Davis.

18          Further, the Bail Reform Act allows for detention here only if the person "is unlikely to abide

19   by a condition or combination of conditions of release," which simply cannot be shown here. Other

20   than the no-contact order, there was no allegation that Mr. Davis failed to abide by any other

21   condition. He came to court, as ordered, on the day he was remanded. There were no new arrests, nor

22   any allegation that he had not been communicating with pretrial services. Remand, in light of the

23   facts here, was inappropriate, and continued detention is inappropriate. *See, e.g.*, *United States v.*

24   *Castro*, 2015 WL 4917243, at *8 (D. Nev. 2015) (the district court did not revoke a fraud defendant's

25   pretrial release even though she was soliciting funds from others; instead, the court ordered an

26   additional condition that she not solicit or receive gifts or borrow money and ordered that she be

27   "further instructed about the requirements of her release conditions.").

28          Mr. Davis also has shown that he does comply with court orders through his history of

compliance in family court proceedings and lack of history of failures to appear. Dkt. No. 16; Exh. C-D, Letter from Family Court Attorney & Documentation of Compliance. As noted in the initial motion for bail review, when the family court judge ordered that Mr. Davis' and Ms. Malepeai's daughter be returned to their care, in July of this year, the assumption was that the parents would continue living and parenting together. Dkt. No. 36 at 3; Exhibit C, Letter from Mariko Nakanishi. Mr. Davis has attended fatherhood and parenting courses since 2021, and he was participating in those up until his remand into custody. Exh. D at 1-2. He completed a sixteen-week domestic violence course. Exh. D at 3-6. He participated in individual counseling. Exh. C. Per his family court attorney, Ms. Nakanishi, he participated in all the family court programming and never missed a court date. Exh. C. This demonstrates that Mr. Davis, in spite of his mistake in the week following his release, can follow court orders.

> **3.** **The "no-contact" provision that was imposed was extreme, in light of the circumstances and other similarly situated co-defendants, and violates *United States v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012) and *United States v. Napulou*, 593 F.3d 1041 (9th Cir. 2010).**

First, not every co-defendant case in this district comes with a no-contact order, including cases with extremely serious allegations. *See, e.g.*, CR 23-390-JST*, United States v. Gomez Gutierrez et al.* (co-defendant possession with intent to distribute over seven pounds of methamphetamine where the co-defendants, who are brothers, were living together at the time of the offense, without a no-contact order of any kind, Dkt. Nos. 17, 19); CR 21-187-JD, *United States v. Palermo* et al (co-defendant conspiracy to commit wire fraud/wire fraud/false statement to a bank case where the co-defendants are business partners, without a no-contact order of any kind, Dkt. No. 7); CR 14-627-SI, *United States v. Halali et al*. (co-defendant conspiracy to commit wire fraud/wire fraud/aggravated identity theft where the co-defendants were coworkers; order was only that there was to be no discussion of the case with co-defendants outside the presence of counsel, Dkt. No. 11).

*Palermo* involves allegations of over $6,000,000 in loss, as compared to the $98.78 alleged here, as well as years of ongoing criminal activity. CR 21-187-JD. And in spite of those aggravating circumstances, there is not a no-contact order between the co-defendants, who have been business partners for years. *Halali* involved coworkers at an insurance agency who were accused and

convicted of submitting fraudulent life insurance applications over the course of six months, and the loss was nearly $3,000,000. CR 14-627-SI. Again, there was far more ongoing criminal activity alleged, and a far higher loss amount than what is present here.

Second, the no-contact order in this case is inappropriate in light of the fact that the state protective order did not prohibit contact; it prohibits only abusive contact, and the family court intended Ms. Malepeai and Mr. Davis to live together during family reunification proceedings. Exhs A-C. Though these facts were not known at the time of the initial appearance, they have come to light since, and they animate the motion to reopen bail filed before the magistrate court and this appeal.

Finally, the imposition of the no-contact order, in light of Ms. Malepeai's and Mr. Davis' relationship (as partners, co-parents, and co-habitants at the time of arrest) violates *Wolf Child* and *Napulou* and impermissibly interferes with their rights to associate as a family. 699 F.3d at 1082.

*Wolf Child* dealt with conditions in a supervised release context, where the analysis is whether the conditions are reasonably related to the goals of deterrence, protection of the public, and/or defendant rehabilitation, involve "no greater deprivation of liberty than is reasonably necessary to achieve those goals," and is consistent with pertinent policy statements issued by the Sentencing Commission. *Id.* at 1090 (citing *Napulou*, 593 F.3d at 1044). The Court held that the condition imposed, which prevented Wolf Child from being in the company of his own daughters, was "procedurally infirm." *Id.* at 1093.

*Napulou* dealt with a ban, also in a supervised release context, of associating with a "life partner" who was a convicted felon. 593 F.3d at 1044. The Court held that the condition was overbroad because it went "beyond the standard prohibition on contact with convicted felons" and "single[d] out a person with whom the individual on supervised release ha[d] an intimate relationship." *Id.* at 1047. Both cases stand for the proposition that before imposing a condition that prevents a defendant from associating with a partner or child, a court must undertake an individualized review of that person and relationship and provide a justification for the imposition of the intrusion. *Napulou*, 593 F.3d at 1047; *Wolf Child*, 699 F.3d at 1092.

While the standard under the Bail Reform Act is different, it analogously dictates that courts release individuals "subjective to the least restrictive further condition, or combination of conditions"

1    as long as those ensure the appearance of a person and the safety of any other person or the

2    community. 18 U.S.C. §3142(c)(1)(B). The no-contact condition here is not the "least restrictive" – in

3    contrast, it is unduly burdensome, even excessive.[1] Although it did allow Mr. Davis and Ms.

4    Malepeai to exchange their four-year-old daughter, it did not take into account that their four-year-old

5    daughter had just been returned to their care, in July, and before that had spent eighteen months in the

6    care of Mr. Davis' mother as a family foster placement during the family court proceedings. This is

7    not a case where the parties could, conceivably, just "exchange" their child. Even more so, both

8    parents cannot effectively parent their child who is about to be born by a mere "exchange." Finally, it

9    interferes with their relationship, which, as evidenced by the recorded calls produced by the

10   government, is certainly an intimate one. *See* Dkt. No. 44 at 3-4.

11       Other than violating this condition, there is no evidence, from the time Mr. Davis spent on

12   bond, that he was committing any new crimes or in any other way failing to comply with supervision

13   conditions. As noted, Ms. Malepeai, in spite of violating the condition, was allowed to remain out on

14   bond and has demonstrated that, even though she violated the condition in multiple ways (including

15   telephonic contact with Mr. Davis while he was in custody, and not subject to bond conditions, and

16   she was certainly subject to them), she has not committed new crimes or missed a court date. The

17   way the court has treated Ms. Malepeai's violation of the condition, as oppose to Mr. Davis, shows

18   that two different standards have been applied to these two co-defendants, these two co-parents. Ms.

19   Malepeai was given a second chance, and a third chance. Mr. Davis was not afforded the same. The

20   request here is that he be treated equally, because his background shows that he can comply with

21   court orders. He has now spent the last three months in custody, separated from his children. He has

22   paid a very heavy price for his mistake.

23       This condition should not have been imposed. And the penalty for failing to follow it should

---

25   [1] In *United States v. Gardner*, the district court found that the Eighth Amendment's Bail Clause
26   applied to conditions of pretrial release. 523 F. Supp. 2d 1025, 1029 (N.D. Cal. 2007).
     Applying *United States v. Salerno*, 481 U.S. 739, 752 (1987), the court considered whether the
27   proposed conditions were " 'excessive' in light of the government's valid interest obtaining an
     additional safeguard against the risk of post-arrest criminal activity." *Id.* Here, the government's
28   interest in ensuring that the co-defendants do not discuss the case can be accomplished by simply
     ordering that. The no-contact order, a complete ban, is excessive, and is depriving soon-to-e two
     children of their father.

1  not be Mr. Davis' continued custody.

2  **CONCLUSION**

3  The full no-contact condition imposed in this case was out of the norm for other similar cases

4  in this district, as described above. While it may have been supported by the evidence presented at the

5  time of the initial appearance, which included that a state protective order with no nuance, it is not

6  supported now, in light of the fact that that protective order allows peaceful contact and the family

7  court intended the parties to co-parent together. Exh. A-D. The no-contact condition intruded on Mr.

8  Davis' right to associate with his children and his partner, in violation of Ninth Circuit precedent.

9  Further, the fact that only Mr. Davis has been remanded to, and remained in, custody for violating the

10  condition speaks to the fact that the parties are not being treated equally.

11  Mr. Davis is respectfully requesting release. He wants to be a father. He is also respectfully

12  requesting that the condition be amended to forbid only discussion of the case between the parties

13  outside the presence of counsel.

17  Dated:      November 29, 2023            Respectfully submitted,

18                                           JODI LINKER
                                             Federal Public Defender
19                                           Northern District of California

20                                                            /S
21                                           SAMANTHA JAFFE
                                             Assistant Federal Public Defender

# EXHIBIT A

**EXHIBITS IN SUPPORT OF MOTION
TO REOPEN MATTER OF BAIL**

CR-160

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Contra Costa<br>STREET ADDRESS: 1000 Center Drive<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:<br>BRANCH NAME: Pittsburg, CA 94565 | FOR COURT USE ONLY |

PEOPLE OF THE STATE OF CALIFORNIA

v.

DEFENDANT: Freddie Davis

F I L E D

OCT 12 2023

K. SHASTI CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By ____ T. Shepfy Clerk

**CRIMINAL PROTECTIVE ORDER—DOMESTIC VIOLENCE**
**(CLETS-CPO)**

☐ ORDER PENDING TRIAL (Pen. Code, § 136.2)        ☒ **MODIFICATION**
☒ **PROBATION CONDITION ORDER (Pen. Code, § 1203.097(a)(2))**

| ORDER UPON CONVICTION: | ☐ PENAL CODE, § 136.2(i)<br>☐ PENAL CODE, § 368(*l*) | ☐ PENAL CODE, § 273.5(j)<br>☐ PENAL CODE, § 646.9(k) | CASE NUMBER:<br>04-201176-5 |
|---|---|---|---|

*This order may take precedence over other conflicting orders; see item 4 on page 4.*

1. **Restrained person**
   *Name: Freddie Davis        *Gender: ☒ M  ☐ F  ☐ Nonbinary  *Race: Blk
   *Date of birth: 07-26-1997  Height: 6'01  Weight: 230  Hair color: Blk  Eye color: BRO

2. **Protected person**
   *Name: Sene Malepeai        *Gender: ☐ M  ☒ F  ☐ Nonbinary  Age: 26

3. **Additional protected persons**
   *Name                        *Gender                    Relationship to person in item 2

   a. ☐  The court finds that the protected person's family members have been targeted or harmed by the defendant (finding required for postconviction orders issued under Penal Code section 136.2(i)).

   b. ☐  The court finds by clear and convincing evidence that the above named percipient witnesses have been harassed by the defendant (finding required for postconviction orders issued under Penal Code section 136.2(i)(2)).

   (For items 1, 2, and 3: Information that has a star (*) next to it is required to add this order into the California Restraining and Protective Order System. Please provide all known information.)

4. **Expiration date**
   a. For pretrial orders, this order remains in effect until further court order. To terminate, courts must use *Notice of Termination of Protective Order in Criminal Proceeding* (form CR-165).

   b. For postconviction orders, this order expires on *(date):* _____ . (Postconviction orders under Penal Code sections 136.2(i), 273.5(j), 368(*l*), and 646.9(k) may be valid for up to 10 years.)

5. **Hearing**
   This proceeding was heard on *(date):* 10/12/23        at *(time):* 8:30 AM  in Dept.: 243
   by *(judicial officer):* JOHN M. ALLEN .

6. **Personal service**
   ☐  Defendant was personally served with a copy of this order at the court hearing, and no additional proof of service of this order is required.

7. The court finds good cause to grant a protective order. See items 8–17.

---

**To the defendant**

- If you do not obey these orders, you can be charged with a crime, go to jail or prison, and/or pay a fine.
- It is a felony to take or hide a child in violation of this order.
- Traveling across state or tribal boundaries with the intent to violate the order may be punishable as a federal offense. (18 U.S.C. § 2261(a)(1).)

---

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CR-160 [Rev. March 1, 2023]<br>Approved by Department of Justice

**CRIMINAL PROTECTIVE ORDER–DOMESTIC VIOLENCE**
**(CLETS-CPO)**

Page 1 of 4

Penal Code, §§ 136.2, 136.2(i)(1), 166,
273.5(j), 368(*l*), 646.9(k), and 1203.097(a)(2)
www.courts.ca.gov

DISTRIBUTION:  ORIGINAL - COURT (COPY FAXED TO LAW ENFORCEMENT)    CANARY - DEFENDANT    PINK - PROTECTED PERSON    GOLDENROD - PROSECUTOR

CR-160

| DEFENDANT: Freddie Davis | CASE NUMBER: 04-201176-5 |
|---|---|

**8. No firearms (guns), firearm parts, or ammunition**

a. The defendant must not own, possess, buy or try to buy, receive or try to receive, or in any other way get any firearms (guns), firearm parts (meaning receivers, frames, or any item that may be used as or easily turned into a receiver or frame; see Penal Code section 16531), or ammunition. Possession of firearms, firearm parts, or ammunition while this order is in effect may subject the defendant to state or federal prosecution and may include jail or prison time and/or a fine.

b. Within 24 hours of receiving this order the defendant must turn in to local law enforcement, or sell to or store with a licensed gun dealer, any firearms and firearm parts owned by the defendant or within the defendant's immediate possession or control.

c. Within 48 hours of receiving this order the defendant must file a receipt with the court showing that all firearms and firearm parts have been turned in, sold, or stored.

d. ☐ The court finds good cause to believe that the defendant has a firearm and firearm parts within their immediate possession or control and sets a review hearing for *(date)*: *(time)*: *(dept.)*: to ascertain whether the defendant has complied with the firearm and firearm parts relinquishment requirements of Code of Civil Procedure section 527.9 (Cal. Rules of Court, rule 4.700).

e. ☐ Limited exemption: The court has made the necessary findings to grant an exemption under Code of Civil Procedure section 527.9(f). Under California law, the defendant is not required to relinquish this firearm *(specify make, model, and serial number of firearm)*: but must only have it during scheduled work hours and to and from their place of work. Even if exempt under California law, the defendant may be subject to federal prosecution for possessing or controlling a firearm.

**9. ☐ No dissuading victim or witness (for pretrial orders issued under Penal Code section 136.2(a)(1))**

The defendant must not attempt to or actually prevent or dissuade any victim or witness from attending a hearing, testifying, or making a report to any law enforcement agency or person.

**10. No obtaining addresses (for orders issued under Penal Code section 136.2)**

a. The defendant must take no action to obtain the addresses or locations of protected persons or their family members, caretakers, or guardians unless good cause exists otherwise.

b. ☐ The court finds good cause not to make this order.

**11. ☒ Order to not abuse**

Defendant must not harass, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy or damage personal or real property, disturb the peace of, keep under surveillance, annoy by phone or other electronic means (including repeatedly contact), impersonate (on the internet, electronically, or otherwise), or block movements of the protected persons named in items 2 and 3.

• "Disturb the peace of" means to destroy someone's mental or emotional calm. This can be done directly or indirectly, such as through someone else. This can also be done in any way, such as by phone, over text, or online. Disturbing the peace includes coercive control.

• "Coercive control" means a number of acts that unreasonably limit the free will and individual rights of any person protected by this restraining order. Examples include isolating them from friends, relatives, or other support; keeping them from food or basic needs; controlling or keeping track of them, including their movements, contacts, activities, money, or access to services; and making them do something by force, threat, or intimidation, including threats based on actual or suspected immigration status; and reproductive coercion, meaning controlling someone's reproductive choices, such as using force, threat, or intimidation to pressure someone to be or not be pregnant, and to control or interfere with someone's contraception, birth control, pregnancy, or access to related health information.

**12. ☐ No-contact order**

Defendant must not contact the protected persons named in items 2 and 3, directly or indirectly, by any means, including by telephone, mail, email or other electronic means, or through a third party. Contact through an attorney under reasonable restrictions set by the court does not violate this order.

**13. ☐ Stay-away order**

Defendant must stay at least _____ yards away from the protected person and their

a. ☐ home   b. ☐ job or workplace   c. ☐ vehicle   d. ☐ other protected person in item 3

e. ☐ other locations:

**CRIMINAL PROTECTIVE ORDER–DOMESTIC VIOLENCE (CLETS-CPO)**

CR-160

| DEFENDANT: Freddie Davis | CASE NUMBER: 04-201176-5 |

**14. ☐ Exceptions**

Defendant may have peaceful contact with the protected persons named in items 2 and 3, as an exception to the no-contact and stay-away orders in items 12 and 13 of this order, only for the safe exchange of children and court-ordered visitation as stated in

a. ☐ the family, juvenile, or probate court order in (case number):

issued on (date):

b. ☐ any family, juvenile, or probate court order issued after the date this order is signed.

The restrained and protected persons should always carry a certified copy of the most recent order issued by the family, juvenile, or probate court.

**15. ☐ Protected animals**

a. The protected persons named in items 2 and 3 are given the exclusive care, possession, and control of the animals listed below:

| Name: | Type of animal: | Breed (optional): | Color (optional): |

b. ☐ Defendant must not take, transfer, sell, encumber, conceal, molest, attack, strike, threaten, harm, or otherwise dispose of the animals listed above.

c. ☐ Defendant must not come within _____ yards of the animals listed above.

**16. ☐ Electronic monitoring**

Defendant must be placed on electronic monitoring for (specify length of time):

(Not to exceed 1 year from the date of this order. Pen. Code, § 136.2(a)(1)(G)(iv), (i)(3).)

**17. ☐ Recordings**

The protected person in item 2 may record communications made by the person in item 1 that violate this order.

**18. ☐ Other orders**

Executed on (date): 10/11/23

_____
JUDICIAL OFFICER

---

**Certificate of Compliance With Violence Against Women Act (VAWA)**

This protective order meets all full faith and credit requirements of the Violence Against Women Act, 18 U.S.C. § 2265 (1994). This court has jurisdiction over the parties and the subject matter, and the restrained person has been afforded notice and a timely opportunity to be heard as provided by the laws of this jurisdiction. **This order is valid and entitled to enforcement in each jurisdiction throughout the 50 states of the United States, the District of Columbia, all tribal lands, and all U.S. territories, and shall be enforced as if it were an order of that jurisdiction.**

---

CR-160 [Rev. March 1, 2023]

**CRIMINAL PROTECTIVE ORDER–DOMESTIC VIOLENCE**
**(CLETS-CPO)**

Page 3 of 4

## Superior Court Of California, County Of Contra Costa
# MISDEMEANOR ORDER OF PROBATION

PROBATION ORDER COMMITMENT FORM    ☐ MARTINEZ    ☒ PITTSBURG    ☐ RICHMOND

DEFENDANT **DAVIS, FREDDIE L. III** DOCKET NO. **04002O1765** DEPT: **243**

The above named defendant having been convicted in this court of the following offense(s), violation of:

Section(s) ☐ 23152 _____ □ with prior(s) _____ ☐ OTHER: **PC 243(e)(1) + PC 236/237**

IT IS ORDERED THAT: ☐ imposition ☐ execution of sentence be suspended during period of probation with the following terms and conditions:

**TERMS OF PROBATION/SUPERVISION:** (Applicable Items Checked): ☒

1. ☐ FORMAL ☒ COURT PROBATION GRANTED:
   For a period of **3** yrs _____ months from the date of this order.
   ☒ STANDARD TERMS (see reverse for standard instructions and additional instructions)
   ☐ Contact Court Probation Officer on _____
2. ☐ REVIEW DATE: _____
   ☐ Defendant must appear in Court. ☐ Defendant need not appear.

**JAIL / FINE / VOLUNTEER WORK / RESTITUTION**
3. ☒ Be IMPRISONED _____ yrs _____ months **90** days.
   ☒ _____ yrs _____ months **14** days actual credit. **14** conduct
   ☐ _____ yrs _____ months _____ days suspended.
   ☒ Eligible for ½ credits. ☐ Sentence to commence on _____
   Report to Martinez Detention Facility (MDF) by 12:00 p.m.
   ☐ Serve consecutive / concurrent with _____
   ☐ any imposed sentence.
   ☐ Jail ☐ SWAP ☐ No EHD ☐ EHD - **O/C**
   ☐ in _____ County allowed.
   ☒ Contact Custody Alternative Facility (CAF) within 14 days.
   ☐ Day-for-day credit for time served in approved residential program.
   ☐ Must complete _____ months _____ days in program.
   ☐ OTHER: _____
4. ☐ Pay a FINE of $ _____
   ☒ Pay RESTITUTION FINE of $ **150** PC 1202.4(b)
   ☒ Make payments to the Court's collection agency, Linebarger.
   ☒ Suspend probation revocation fine $ **150** PC 1202.44
   ☐ Probation to terminate upon payment of fine/completion of jail sent.
   ☐ _____ days jail concurrent / consecutive in lieu of fine.
5. ☐ Perform _____ hours VOLUNTEER COMMUNITY SERVICE
   ☐ In lieu of fine ☐ OTHER: _____
   ☐ Show proof of completion to Court or DPO by _____
6. ☐ Pay VIC RESTITUTION of $ _____ PC 1202.4(f)
   ☐ VICTIM: _____
   ☐ Make RESTITUTION as determined by further order from the Court.
   ☐ Make payments to the Court's collection agency, Linebarger.
7. ☐ Submit your person, place of residence, storage locker, any vehicle or property under your control to search and seizure at any time of day or night, with or without warrant, to any peace officer
   ☐ for alcoholic beverages only ☐ _____
8. ☐ Not use or possess any controlled substances, narcotics, cannabis, or narcotic paraphernalia without a prescription from a licensed physician.
9. ☐ Not possess, control, or have custody of checks, credit cards, ATM cards, mail, or identification unless valid and in your own name.
10. ☐ Do not own, possess or control any deadly or dangerous weapons, including firearms and other concealable weapons.
    10a. ☐ Pursuant to PC 29810 def. provided Proh. Persons Relin. Forms
11. ☐ Weapon ordered ☐ confiscated ☐ destroyed
    ☐ returned to _____
12. ☐ Do not annoy / threaten / contact _____
13. ☐ Stay away from _____ ☐ _____ yrs.
    _____ ☐ _____ yrs.
    _____ ☐ _____ yds.
14. ☐ Do not possess or consume alcoholic beverages.
15. ☐ Submit to drug / alcohol detection tests as directed by Court Probation Officer or by any Peace Officer.
16. ☐ Not go to places where you know alcoholic beverages are the chief item of sale.

**PROGRAM TERMS**
17. ☐ Attend and complete the _____
    Alcohol Program. ☐ <.15 = 3 mo. ☐ .15 - .19 = 6 mo. ☐ >.20 = 9 mo.
18. ☐ Report to Post conviction Drinking Driver's Program within 10 days and comply with its rules and fee requirements.
19. ☐ Attend Domestic Violence / Anger Management / Parenting Program.
    ☐ _____ weeks
20. ☐ Participate in counseling as directed by the Court Probation Officer and not leave or terminate program without permission.
21. ☐ Register per ☐ H&S 11590 ☐ PC 457.1 ☐ PC 290 ☐ Gang
22. ☐ Referred for HIV testing. Test date on _____
    ☐ OTHER: _____

**DRIVING TERMS**
23. ☐ Driving privilege restricted for _____ to / during / from:
    Employment, treatment program, school, other: _____
24. ☐ Driving privilege suspended / revoked for _____
25. ☐ Not drive a motor vehicle unless properly licensed and insured.
26. ☐ Not drive vehicle with any measurable alcohol in blood.
27. ☐ If arrested for a violation of 23152 or 23153 CVC, do not refuse a chemical test for the detection of alcohol.
28. ☐ Designated habitual traffic offender.
29. ☐ Ignition Interlock Device ☐ ordered ☐ not ordered ☐ _____ yrs
    ☐ Provide proof of installation to Court within 30 days.
    ☐ OTHER: _____

**ADDITIONAL TERMS**
30. ☐ PC 296 ordered / verified
31. ☐ Refer to CCU, Ability to Pay
32. ☒ OTHER: **CPO issued on Deft.**
    **(Peaceful Contact)**

Although not a condition of Probation, you are ordered to pay the following fees:
☒ CCA $ **30** ☒ COA $ **40**
☐ $41 Theft Fee PC 1202.5
☐ OTHER _____

I HAVE READ AND RECEIVED A COPY OF THESE CONDITIONS OF PROBATION AND I UNDERSTAND AND AGREE TO PERFORM THEM AND UNDERSTAND THAT IF I FAIL TO DO SO, MY PROBATION MAY BE REVOKED AND I MAY BE SENTENCED TO JAIL OR SENTENCED AS OTHERWISE PROVIDED BY LAW.

DEFENDANT'S SIGNATURE **Davis**
SOC. SEC. # _____ DOB **07/26/97**
ADDRESS **5430 Sunset Meadows Ln**
CITY **Oakley** ST **CA** ZIP **94561**
HOME PH. **(510) 435-8371** CELL PH. (____) _____

**COMMITMENT:** TO THE SHERIFF: I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY OF THE ENTRY OF JUDGMENT OR ORDER AND IS YOUR AUTHORITY FOR THE EXECUTION THEREOF.

_**Nailler**_ _____ **10/5/22**
JUDGE          DATED

# EXHIBIT B

**EXHIBITS IN SUPPORT OF MOTION
TO REOPEN MATTER OF BAIL**

**From:** Mishya Singh <████████████████████>
**Sent:** Friday, September 22, 2023 11:40:26 AM
**To:** Samantha Jaffe <████████████████>
**Cc:** Frank Tamburello <█████████████████████>; Michael Lepie <████████████████████>
**Subject:** Re: Freddie Davis

I am requesting to have the matter added to calendar on 9/28. I can let them know Mr. Davis is at Santa Rita Jail. Perhaps Coco SO can coordinate having it served on Mr. Davis.

Once I have the corrected CPO, I'll email it to you.

Sent from my iPhone

Begin forwarded message:

**From:** Department 05 <████████████████████>
**Date:** September 19, 2023 at 11:27:46 AM PDT
**To:** Mishya Singh <████████████████>, Department 05
<█████████████████>, Arsh Singh <A████████████████>
**Subject: RE: Freddie Davis 4-201176-5**


Ms. Singh,
This case would need to be added to calendar so that the D.A. could provide the corrected CPO and so that the defendant can be personally served with the order.  Please let me know of a date <u>certain</u> that the defendant could appear at 8:30am.  I will add this matter to Dept. 5's calendar on that date.

Sincerely,
*Kathleen Ballard*
Courtroom Clerk
████████████████

**From:** Mishya Singh <████████████████>
**Sent:** Monday, September 18, 2023 3:32 PM
**To:** Department 05 <██████████████████ Arsh Singh <A████████████████>
**Subject:** Fwd: Freddie Davis 4-201176-5

Court and Counsel:

Last year, this matter resolved for misdemeanor disposition, including peaceful contact.  The CPO attached is incorrect. It reflects a stay away.

Can it be corrected, please?

Best,
Mishya

# EXHIBIT C

**EXHIBITS IN SUPPORT OF MOTION
TO REOPEN MATTER OF BAIL**



**MARIKO NAKANISHI**
ATTORNEY AT LAW

September 18, 2023

**Re:     Freddie Davis III**

To Whom It May Concern:

I have been appointed by the Unified Family Court of the Superior Court of California, County of San Francisco, to represent the father, Freddie Davis III, in his juvenile dependency case involving his minor child, R.D.  Mr. Davis and the mother of R.D., Sene Malepeai, have been in court-ordered reunification services with their daughter since July 2021.

Mr. Davis's reunification case plan required him to participate in individual counseling, parenting education, and a county approved domestic violence program.  During the course of the case, Mr. Davis has successfully completed his domestic violence program, has completed his parenting education program, and has actively participated in individual counseling and his Fatherhood group.

On July 11, 2023, at the 18-Month Review Hearing for R.D., the juvenile court ordered that the child be immediately returned home to both Mr. Davis and Ms. Malepeai who have been residing together in the family home, and no later than July 14, 2023.  The court further found that the parents had made significant progress in resolving the problems that led to the removal of the child, and that the parents had demonstrated the capacity and ability to complete the objectives of the treatment plan, and to provide for the child's safety, protection, and physical and emotional health.

The family has continued to be under the supervision of Children and Family Services, with regular and ongoing contact with the social worker who visits with the parents and child in the family home to provide support and help ensure the child's needs continue to be met by the family.  Our next court hearing is scheduled for October 10, 2023.

Please feel free to contact me should you have any questions.  I can be reached at 415-890-6898, or via email at mnakanishilaw@gmail.com.

Very truly yours,

Mariko Nakanishi
Attorney for Father, Freddie Davis III

# EXHIBIT D

**EXHIBITS IN SUPPORT OF MOTION
TO REOPEN MATTER OF BAIL**



## CORDERO PARENTING CONSULTING

**Mr. Joey Cordero**
Director, General Manager
8 10ᵗʰ St.
San Francisco, CA 94103

Date: 15 September 2023

To whom it may concern:

I am writing this letter on behalf of Mr. Freddie Davis. I have been working with Freddie through our fatherhood group **"Father Can You Hear Me"** since 11/14/2022. The group meets on Mondays from 4:30pm to 6:00 pm virtually and in person. Our program helps fathers develop community by providing a safe space for them to share their struggles and strengths. We focus on maintaining healthy relationships; where participants learn new strategies to co-parent and nurture their children.

Freddie has been an active participant by sharing his journey of fatherhood including how he was referred to the group and accepting feedback from his peers. Freddie has also displayed a willingness to uplift his peers by sharing his own experiences and pointing out their strengths when they are feeling discouraged. Mr. Davis continued to come to the group even after his re-unification with his child in July of 2023. It has been very helpful to his peers to hear how he has stayed on course with his case plan by devoting himself to his family.

Please feel free to contact me using the information below should you need more information.

Sincerely,

Joey Cordero

March 31, 2023


Re: Freddie Davis


This is a letter to verify the participation of client Freddie Davis being an active client of Compass Family Services in San Francisco. Mr. Davis has been a client of Compass since May 2021 through the present. This parent has participated in the following Parent Education services with our program:


1. Completion of 3P Parenting Class series.
2. Client participated in weekly parent coaching sessions with parent educator through December 2022.
3. Referral to behavioral health services in 2022 and introduction of individual therapy.
4. Bimonthly parent check ins to strengthen parenting skills.

This client continues to engage with parent education and family support services within our program. We are advocating for this client to have a social work referral for therapy within his county of residence or CPS case as well. The parent educator will continue to provide parent coaching and support to this father.

If there are any questions regarding services, or needed resources and referrals, please contact me at ███████████


Cecily Banks

Parent Educator

Compass Family Services

## DOMESTIC VIOLENCE BATTERERS' TREATMENT PROGRAM
## STANDARD REPORTING FORM

### AGENCY INFORMATION

**TYPE OF REPORT:** ☐ ENROLLMENT  ☑ PROGRESS  ☐ COMPLETION  ☐ TERMINATION

**MONTH OF:** 06/30/2023
**PROGRAM PROVIDER:** Streets2Schools Inc (s2sdvonline.com)    **PHONE:** (916) 629-3045    **FAX:** (909) 752-5445
**MAIN ADDRESS:** POB 6848 PMB 316    **CITY:** Big Bear Lake    **STATE:** CA    **ZIP:** 92315

### CLIENT INFORMATION

**CLIENT NAME:** Davis, Freddie    **PROBATION #:**    **CASE #:** 21-3163    **DOB:** 07/26/97
**ADDRESS:** 342 Anemone Ct., Patterson Aa, 94551    **PHONE:** 5104358575

### PROGRAM INFORMATION

**DAY/TIME OF GROUP:** Wed 10:00 AM    **FACILITATOR(S):**
**LOCATION OF GROUP:** INTERNET    **INTAKE COMPLETION DATE:** 02/24/2023 10:44
**TOTAL SESSIONS NEEDED AT INTAKE:** 16    **SESSIONS STARTED DATE:** 02/27/2023
**TOTAL SESSIONS ATTENDED TO DATE:** 16    **TOTAL ABSENCES:** 0

### FEE INFORMATION

**FEE PER SESSION:** $ FUNDED    **DATE OF LAST RE-ASSESSMENT:** 02/24/2023
**FEE AMOUNT PAID TO DATE:** $ 10    **FEE AMOUNT CURRENTLY OWED:** $ 625

### EVALUATION

**Rating Scale:**    0= Unknown    1= Rarely    2= Not Often    3= Sometimes    4= Often    5= Very Often

**(1)** 4.4    **Participation:** Participates constructively in group, and initiates positive and respectful dialogue.
**(2)** 5.0    **Sobriety:** No apparent abuse of drugs or alcohol, compliance with any required or recommended treatment.
**(3)** 5.0    **Acceptance of Responsibility:** admits to violence with no minimizing, no blaming, no excuses, and no denial.
**(4)** 3.4    **Skills Development:** Takes steps to avoid violence, uses anger management techniques, does homework, follows recommendations, has good communication and non-controlling conflict resolution skills.
**(5)** 4.3    **Respect:** Respectful, considerate, non-controlling attitude toward others including members of group and other gender; attentiveness and positive attitudes.
**(6)** 4.6    **Language:** No verbal abuse, respectful language in group and towards victims/partners as well as others, no prejudicial language, and confronts others who use prejudicial language.
**(7)** 4.2    **Empathy & Insight:** Shows insight concerning abusiveness, its effects on partners and children, and its dangerousness. Understands the fear and trauma the abuse causes and realizes the negative impact of using power and control in relationships and in trying to intimidate others in relationships.
**(8)** 5    **Written work completion status. Rubric for evaluation:** 1 is <10% completed, 2 is ≥ 10% and <30%, 3 is ≥30% and < 60%, 4 is ≥60% and < 90%, 5 is ≥90% completed. NA is based on assessment. Greater benefit is acquired through written work to facilitate concept acquisition into client application. Our individualized program affords flexibility in scaffolding literacy level for written expectations when needed to determine benefit. Free tutoring is available.

**Assessment of further risk of abuse/violence:** Low

### PROVIDER STATEMENT

**CURRENT COUNSELING NEEDS, RECOMMENDATIONS TO REFERRING AGENCY, AND COMPLETED, TERMINATED, OR IMMEDIATE REPORT OF VIOLATION INFORMATION:**

Progress report for June, 2023, Domestic Violence BIP 16 week.
I declare that the information contained in this report is true and correct based upon the requirements of the program provider, the ERROR Standards & Guidelines for Batterers' Treatment Programs, and California State Law.

**PRINT NAME:** Denise Healy    **DATE:** 07/11/2023
**SIGN NAME:** D. Healy

# DOMESTIC VIOLENCE BATTERERS' TREATMENT PROGRAM
## STANDARD REPORTING FORM

## AGENCY INFORMATION

**TYPE OF REPORT:** ☐ ENROLLMENT  ☑ PROGRESS  ☐ COMPLETION  ☐ TERMINATION

**MONTH OF:** 06/20/2023
**PROGRAM PROVIDER:** Streets2Schools Inc (s2sdvonline.com)   **PHONE:** (916) 629-3045   **FAX:** (909) 752-5445
**MAIN ADDRESS:** POB 6848 PMB 316   **CITY:** Big Bear Lake   **STATE:** CA   **ZIP:** 92315

## CLIENT INFORMATION

**CLIENT NAME:** Davis, Freddie   **PROBATION #:**   **CASE #:** 21-3163   **DOB:** 07/26/97
**ADDRESS:** 342 Anemone Ct., Patterson Aa, 94551   **PHONE:** 5104358575

## PROGRAM INFORMATION

**DAY/TIME OF GROUP:** Wed 10:00 AM   **FACILITATOR(S):** Reno B
**LOCATION OF GROUP:** INTERNET   **INTAKE COMPLETION DATE:** 02/24/2023 10:44
**TOTAL SESSIONS NEEDED AT INTAKE:** 16   **SESSIONS STARTED DATE:** 02/27/2023
**TOTAL SESSIONS ATTENDED TO DATE:** 13   **TOTAL ABSENCES:** 0

## FEE INFORMATION

**FEE PER SESSION:** $ FUNDED   **DATE OF LAST RE-ASSESSMENT:** 02/24/2023
**FEE AMOUNT PAID TO DATE:** $ 10   **FEE AMOUNT CURRENTLY OWED:** $ 520

## EVALUATION

Rating Scale:   0= Unknown   1= Rarely   2= Not Often   3= Sometimes   4= Often   5= Very Often

**(1)** 4.6   **Participation:** Participates constructively in group, and initiates positive and respectful dialogue.

**(2)** 5.0   **Sobriety:** No apparent abuse of drugs or alcohol, compliance with any required or recommended treatment.

**(3)** 5.0   **Acceptance of Responsibility:** admits to violence with no minimizing, no blaming, no excuses, and no denial.

**(4)** 3.1   **Skills Development:** Takes steps to avoid violence, uses anger management techniques, does homework, follows recommendations, has good communication and non-controlling conflict resolution skills.

**(5)** 4.4   **Respect:** Respectful, considerate, non-controlling attitude toward others including members of group and other gender; attentiveness and positive attitudes.

**(6)** 4.7   **Language:** No verbal abuse, respectful language in group and towards victims/partners as well as others, no prejudicial language, and confronts others who use prejudicial language.

**(7)** 4.2   **Empathy & Insight:** Shows insight concerning abusiveness, its effects on partners and children, and its dangerousness. Understands the fear and trauma the abuse causes and realizes the negative impact of using power and control in relationships and in trying to intimidate others in relationships.

**(8)** 5   **Written work completion status. Rubric for evaluation:** 1 is <10% completed, 2 is ≥ 10% and <30%, 3 is ≥30% and < 60%, 4 is ≥60% and < 90%, 5 is ≥90% completed. NA is based on assessment. Greater benefit is acquired through written work to facilitate concept acquisition into client application. Our individualized program affords flexibility in scaffolding literacy level for written expectations when needed to determine benefit. Free tutoring is available.

**Assessment of further risk of abuse/violence:** Low

## PROVIDER STATEMENT

**CURRENT COUNSELING NEEDS, RECOMMENDATIONS TO REFERRING AGENCY, AND COMPLETED, TERMINATED, OR IMMEDIATE REPORT OF VIOLATION INFORMATION:**

Progress report for June, 2023, Domestic Violence BIP 16 week. During this period: Client shared his success in refraining from negativity this week. Client shared his use of anger management skills to prevent triggering situations.
I declare that the information contained in this report is true and correct based upon the requirements of the program provider, the ERROR Standards & Guidelines for Batterers' Treatment Programs, and California State Law.

**PRINT NAME:** Denise Healy   **DATE:** 06/20/2023
**SIGN NAME:** D. Healy

## DOMESTIC VIOLENCE BATTERERS' TREATMENT PROGRAM
## STANDARD REPORTING FORM

### AGENCY INFORMATION

**TYPE OF REPORT:** ☐ ENROLLMENT  ☑ PROGRESS  ☐ COMPLETION  ☐ TERMINATION

**MONTH OF:** 05/20/2023
**PROGRAM PROVIDER:** Streets2Schools Inc (s2sdvonline.com)     **PHONE:** (916) 629-3045     **FAX:** (909) 752-5445
**MAIN ADDRESS:** POB 6848 PMB 316               **CITY:** Big Bear Lake     **STATE:** CA     **ZIP:** 92315

### CLIENT INFORMATION

**CLIENT NAME:** Davis, Freddie          **PROBATION #:**          **CASE #:** 21-3163          **DOB:** 07/26/97
**ADDRESS:** 342 Anemone Ct., Patterson Aa, 94551                       **PHONE:** 5104358575

### PROGRAM INFORMATION

**DAY/TIME OF GROUP:** Wed 10:00 AM                 **FACILITATOR(S):** Reno B
**LOCATION OF GROUP:** INTERNET                     **INTAKE COMPLETION DATE:** 02/24/2023 10:44
**TOTAL SESSIONS NEEDED AT INTAKE:** 16             **SESSIONS STARTED DATE:** 02/27/2023
**TOTAL SESSIONS ATTENDED TO DATE:** 9              **TOTAL ABSENCES:** 0

### FEE INFORMATION

**FEE PER SESSION:** $ FUNDED                       **DATE OF LAST RE-ASSESSMENT:** 02/24/2023
**FEE AMOUNT PAID TO DATE:** $ 10                   **FEE AMOUNT CURRENTLY OWED:** $ 380

### EVALUATION

**Rating Scale:**     0= Unknown     1= Rarely     2= Not Often     3= Sometimes     4= Often     5= Very Often

(1) 4.7   **Participation:** Participates constructively in group, and initiates positive and respectful dialogue.
(2) 5.0   **Sobriety:** No apparent abuse of drugs or alcohol, compliance with any required or recommended treatment.
(3) 5.0   **Acceptance of Responsibility:** admits to violence with no minimizing, no blaming, no excuses, and no denial.
(4) 3.5   **Skills Development:** Takes steps to avoid violence, uses anger management techniques, does homework, follows recommendations, has good communication and non-controlling conflict resolution skills.
(5) 4.7   **Respect:** Respectful, considerate, non-controlling attitude toward others including members of group and other gender; attentiveness and positive attitudes.
(6) 5     **Language:** No verbal abuse, respectful language in group and towards victims/partners as well as others, no prejudicial language, and confronts others who use prejudicial language.
(7) 4.4   **Empathy & Insight:** Shows insight concerning abusiveness, its effects on partners and children, and its dangerousness. Understands the fear and trauma the abuse causes and realizes the negative impact of using power and control in relationships and in trying to intimidate others in relationships.
(8) 5     **Written work completion status. Rubric for evaluation:** 1 is <10% completed, 2 is ≥ 10% and <30%, 3 is ≥30% and < 60%, 4 is ≥60% and < 90%, 5 is ≥90% completed. NA is based on assessment. Greater benefit is acquired through written work to facilitate concept acquisition into client application. Our individualized program affords flexibility in scaffolding literacy level for written expectations when needed to determine benefit. Free tutoring is available.

**Assessment of further risk of abuse/violence:** Low

### PROVIDER STATEMENT

**CURRENT COUNSELING NEEDS, RECOMMENDATIONS TO REFERRING AGENCY, AND COMPLETED, TERMINATED, OR IMMEDIATE REPORT OF VIOLATION INFORMATION:**

Progress report for May, 2023, Domestic Violence BIP 16 week. During this period: Client shared his success in preventing the tension phase. Client shared his strength in sharing vulnerably. Client shared his strategy to overcome denial.
I declare that the information contained in this report is true and correct based upon the requirements of the program provider, the ERROR Standards & Guidelines for Batterers' Treatment Programs, and California State Law.

**PRINT NAME:** Denise Healy                       **DATE:** 05/20/2023
**SIGN NAME:** D. Healy

## DOMESTIC VIOLENCE BATTERERS' TREATMENT PROGRAM
## STANDARD REPORTING FORM

### AGENCY INFORMATION

**TYPE OF REPORT:** ☐ ENROLLMENT ☑ PROGRESS ☐ COMPLETION ☐ TERMINATION

**MONTH OF:** 03/31/2023
**PROGRAM PROVIDER:** Streets2Schools Inc (s2sdvonline.com)     **PHONE:** (916) 629-3045     **FAX:** (909) 752-5445
**MAIN ADDRESS:** POB 6848 PMB 316     **CITY:** Big Bear Lake     **STATE:** CA     **ZIP:** 92315

### CLIENT INFORMATION

**CLIENT NAME:** Davis, Freddie     **PROBATION #:**     **CASE #:** 21-3163     **DOB:** 07/26/97
**ADDRESS:** 342 Anemone Ct., Patterson Aa, 94551     **PHONE:** 5104358575

### PROGRAM INFORMATION

**DAY/TIME OF GROUP:** Wed 5:15 PM     **FACILITATOR(S):** Reno B
**LOCATION OF GROUP:** INTERNET     **INTAKE COMPLETION DATE:** 02/24/2023 10:44
**TOTAL SESSIONS NEEDED AT INTAKE:** 16     **SESSIONS STARTED DATE:** 02/27/2023
**TOTAL SESSIONS ATTENDED TO DATE:** 4     **TOTAL ABSENCES:** 0

### FEE INFORMATION

**FEE PER SESSION:** $ FUNDED     **DATE OF LAST RE-ASSESSMENT:** 02/24/2023
**FEE AMOUNT PAID TO DATE:** $ 10     **FEE AMOUNT CURRENTLY OWED:** $ 205

### EVALUATION

**Rating Scale:**    **0= Unknown**    **1= Rarely**    **2= Not Often**    **3= Sometimes**    **4= Often**    **5= Very Often**

**(1) 5.0**   **Participation:** Participates constructively in group, and initiates positive and respectful dialogue.

**(2) 5.0**   **Sobriety:** No apparent abuse of drugs or alcohol, compliance with any required or recommended treatment.

**(3) 5.0**   **Acceptance of Responsibility:** admits to violence with no minimizing, no blaming, no excuses, and no denial.

**(4) 3.2**   **Skills Development:** Takes steps to avoid violence, uses anger management techniques, does homework, follows recommendations, has good communication and non-controlling conflict resolution skills.

**(5) 4.6**   **Respect:** Respectful, considerate, non-controlling attitude toward others including members of group and other gender; attentiveness and positive attitudes.

**(6) 4.9**   **Language:** No verbal abuse, respectful language in group and towards victims/partners as well as others, no prejudicial language, and confronts others who use prejudicial language.

**(7) 4.3**   **Empathy & Insight:** Shows insight concerning abusiveness, its effects on partners and children, and its dangerousness. Understands the fear and trauma the abuse causes and realizes the negative impact of using power and control in relationships and in trying to intimidate others in relationships.

**(8) 4**   **Written work completion status. Rubric for evaluation:** 1 is <10% completed, 2 is ≥ 10% and <30%, 3 is ≥30% and < 60%, 4 is ≥60% and < 90%, 5 is ≥90% completed. NA is based on assessment. Greater benefit is acquired through written work to facilitate concept acquisition into client application. Our individualized program affords flexibility in scaffolding literacy level for written expectations when needed to determine benefit. Free tutoring is available.

**Assessment of further risk of abuse/violence:** Low

### PROVIDER STATEMENT

**CURRENT COUNSELING NEEDS, RECOMMENDATIONS TO REFERRING AGENCY, AND COMPLETED, TERMINATED, OR IMMEDIATE REPORT OF VIOLATION INFORMATION:**

Progress report for March, 2023, Domestic Violence BIP 16 week. During this period: Client is working on learning class norms. Client is practicing using active listening and learning to let go of the rope.
I declare that the information contained in this report is true and correct based upon the requirements of the program provider, the ERROR Standards & Guidelines for Batterers' Treatment Programs, and California State Law.

**PRINT NAME:** Denise Healy     **DATE:** 04/03/2023
**SIGN NAME:** D. Healy

CR-160

| DEFENDANT: | CASE NUMBER: |
|---|---|

## Instructions for Law Enforcement

### 1. Start Date and End Date of Order

This order starts on the date it was issued by a judicial officer.

This order ends as ordered in item 4 on page 1 of this order.

- Orders under Penal Code section 136.2(a) are valid as long as the court has jurisdiction over the case. They are not valid after imposition of a county jail or state prison commitment. (*People v. Stone* (2004) 123 Cal.App.4th 153.)

- Orders issued under Penal Code sections 136.2(i)(1), 273.5(j), 368(*l*), and 646.9(k) are valid for up to 10 years and may be issued by the court whether the defendant is sentenced to state prison, county jail, or subject to mandatory supervision or if imposition of sentence is suspended and the defendant is placed on probation.

- Orders under Penal Code section 1203.097(a)(2) are probationary orders, and the court has jurisdiction as long as the defendant is on probation.

- To terminate this protective order, courts should use form CR-165, *Notice of Termination of Protective Order in Criminal Proceeding (CLETS-CANCEL)*.

### 2. If the Protected Person Contacts the Restrained Person

Even if the protected person invites or consents to contact with the restrained person, the orders remain in effect and must be enforced. The protected person cannot be arrested for inviting or consenting to contact with the restrained person. The orders can be changed only by another court order. (Pen. Code, § 13710(b).)

### 3. Enforcing This Order in California

- This order must be enforced in California by any law enforcement agency that has received the order, or is shown a copy of the order, or has verified its existence on the California Law Enforcement Telecommunications System (CLETS).

- Law enforcement must determine whether the restrained person had notice of the order. If notice cannot be verified, law enforcement must advise the restrained person of the terms of the order and, if the restrained person fails to comply, must enforce it. (Fam. Code, § 6383.)

### 4. Conflicting Orders—Priority of Enforcement

If more than one restraining order has been issued protecting the protected person from the restrained person, the orders must be enforced in the following priority (see Penal Code section 136.2 and Family Code sections 6383(h)(2), 6405(b)):

- **Emergency Protective Order (EPO):** If one of the orders is an *Emergency Protective Order* (form EPO-001), provisions (e.g., stay-away order) that are more restrictive than in the other restraining/protective orders must be enforced. Provisions of another order that do not conflict with the EPO must be enforced.

- **No-Contact Order:** If a restraining/protective order includes a no-contact order, the no-contact order must be enforced. Item 12 is an example of a no-contact order.

- **Criminal Protective Order (CPO):** If none of the orders includes an EPO or a no-contact order, the most recent CPO must be enforced. (Family Code sections 6383(h)(2), 6405(b).) Additionally, a CPO issued in a criminal case involving charges of domestic violence, Penal Code sections 261, 261.5, or former 262, or charges requiring sex offender registration must be enforced over any civil court order. (Penal Code section 136.2(e)(2).) All provisions in the civil court order that do not conflict with the CPO must be enforced.

- **Civil Restraining Orders:** If there is more than one civil restraining order (e.g., domestic violence, juvenile, elder abuse, civil harassment) then the order that was issued last must be enforced. Provisions that do not conflict with the most recent civil restraining order must be enforced.

## Peace Officer Firearm Prohibition Exemption

If a peace officer's employment and personal safety depend on the ability to carry a firearm, a court may grant an exemption that allows the officer to carry a firearm on or off duty, but only if the court finds, after a mandatory psychological examination of the peace officer, that the officer does not pose a threat of harm. (Code Civ. Proc., § 527.9(f).)

**CRIMINAL PROTECTIVE ORDER–DOMESTIC VIOLENCE**
**(CLETS-CPO)**