ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
MOLLY K. PRIEDEMAN (CABN 302096)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Eric.Cheng@usdoj.gov
    Molly.Priedeman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:24-CR-00406 YGR-1 |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| FREDDIE LEE DAVIS III, | |
| Defendant. | |

## I.     INTRODUCTION

In June 2021, as the residents of the San Francisco Bay Area began to move past the height of the COVID-19 pandemic, Defendant Freddie Lee Davis III took part in a robbery crew in the East Bay focused on robbing people of Asian descent because they were "easy targets" who wouldn't fight back. After victim Q.D. was robbed and her possessions were divvied up, Defendant and his codefendant Sene Malepeai were caught on camera fraudulently using Q.D.'s credit card—and when they were later arrested, they had Q.D.'s wallet and card on hand.

At the time of this incident, Defendant had already been arrested numerous times on violations involving resisting arrest, domestic violence related to his codefendant Sene Malepeai, and firearms. Since the incident, Defendant has been arrested more times for resisting arrest and battery, domestic violence, firearms, repeatedly violating a domestic violence court order, and driving with a suspended license (resulting in a misdemeanor conviction).

Following the federal charges in this case and Defendant's release on bond, Defendant "immediately and blatantly" violated his conditions of release and was remanded to federal custody by Chief Magistrate Judge Donna M. Ryu.

Defendant has now pleaded guilty to wire fraud and aggravated identity theft, a violation that carries a two-year mandatory minimum sentence. The parties and United States Probation recommend that this Court sentence Defendant to 24 months and a day of imprisonment (above the Guidelines of zero to six months), followed by 3 years of supervised release with an order of restitution. Based on Defendant's history and characteristics, as well as the nature and circumstances of Defendant's serious offenses, the government recommends that the Court accept the parties' binding plea agreement. This proposed sentence is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a)(2).

## II.    BACKGROUND

### A.     Factual Background

On June 17, 2021, San Leandro Police Department (SLPD) officers responded to a report of a robbery in the parking lot outside Costco, located at 1900 Davis Street in San Leandro, California. PSR ¶ 7. The victim of the robbery was an Asian female, identified as Q.D. *Id.*

1   The robbery occurred in the store's parking lot after she exited Costco with her mother.  PSR ¶ 8.
2   As she was walking to her vehicle, a car drove alongside her.  *Id.*  According to Q.D.'s statements to
3   SLPD, an individual reached out of a rear window and grabbed hold of Q.D.'s purse from the moving
4   car.  *Id.*  Q.D. held on to her purse and was dragged the width of several cars.  *Id.*  The car then sped
5   away, and she let go of her purse.  *Id.*  When Q.D. released her grasp on the purse, she fell to the ground,
6   resulting in bodily injuries, including abrasions to her leg and swelling on her hand.  *Id.*  Several
7   witnesses heard Q.D. scream, heard her body hit the asphalt, and saw a black Honda speed away from
8   the incident.  *Id.*

9   Parts of the robbery were captured on Costco's surveillance cameras.  PSR ¶ 9.  The footage
10  revealed that the suspect vehicle was a black Honda Accord, with a license plate number that was
11  registered to Defendant.  *Id.*  The video surveillance footage captured the subject vehicle approaching
12  Q.D. from behind.  *Id.*  It also captured the vehicle speeding away, and Q.D. falling to the ground.
13  During the robbery, Q.D.'s purse was stolen, which included two cell phones, a PayPal MasterCard
14  credit card, and approximately $1,800 in cash.  *Id.*  In the days following the robbery, Q.D. noted nearly
15  a dozen unauthorized transactions on her stolen credit card, including a $98.78 charge at Foot Locker in
16  San Leandro, California on June 19, 2021.  *Id.*

17  Law enforcement obtained surveillance camera footage capturing purchases made at the San
18  Leandro Foot Locker on June 19, 2021, during the time that Q.D.'s stolen credit card was utilized.  PSR
19  ¶ 10.  The footage revealed on June 19, 2021, at 2:30 p.m., a male matching the description of
20  Defendant and a female, identified as codefendant Sene Malepeai, approached the register.  *Id.*  Malepeai
21  fraudulently purchased a pair of Nike Air Force 1 shoes for $98.78 and charged them to Q.D.'s stolen
22  credit card.  *Id.*  Malepeai then handed the credit card to Defendant, who placed the card inside his pant
23  pocket.  *Id.*  Thereafter, the two individuals left the store.  *Id.*

24  On June 24, 2021, SLPD detectives arrested Defendant while he was attempting to leave a
25  parking lot in San Leandro in the same black Honda Accord that was used in the robbery at Costco.
26  PSR ¶ 11.  Malepeai was in the vehicle at the time of Defendant's arrest.  *Id.*  SLPD conducted a search
27  of Defendant's car and recovered Q.D.'s wallet on the front passenger's floorboard, where Malepeai had
28  been seated.  SLPD also seized Q.D.'s stolen credit card from Defendant's person.  PSR ¶ 12.

1       Audio recordings captured on June 24, 2021, and July 8, 2021, contained numerous statements by Malepeai related to this incident and others. PSR ¶ 13. Malepeai stated that she was in a romantic relationship with Defendant and that she was in the front passenger seat of Defendant's car during the June 17, 2021, robbery at Costco. *Id.* She identified Defendant as the driver during the robbery. *Id.* She identified the driver side rear passenger as R.T. and the passenger side rear passenger as E.S. *Id.*

      Malepeai stated that the day of the robbery, Defendant, E.S., and R.T., had discussed going to Chinatown to rob Asian women with purses or jewelry. PSR ¶ 14. Malepeai stated that they first drove to Chinatown to look for Asians with purses, then went to a Walmart parking lot, and eventually ended up at the San Leandro Costco. *Id.* Malepeai stated that she was aware that R.T. and E.S. preferred robbing Asians because they talked about robbing Asians, and she had seen a news article about a robbery of an Asian individual committed by R.T. *Id.* Malepeai stated that E.S. and R.T. like to rob Asian females because they think they have more money, and because Asians are "easy targets" who don't fight back. *Id.* Malepeai stated that the day of the robbery at Costco, they first tried to steal another woman's purse in the parking lot, but when they approached the woman, she saw the car, and pulled her purse away. PSR ¶ 15. Malepeai stated that when she saw Q.D., she knew that R.T. and E.S. were going to want to rob her. *Id.* She further stated that it was E.S. who reached out the window and grabbed Q.D.'s purse. *Id.*

      **B.**      **Procedural History**

      Defendant was charged in a criminal complaint on June 30, 2023 with Wire Fraud in violation of 18 U.S.C. § 1343 and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. Dkt. No. 1.

      Defendant was arrested on a federal warrant on August 24, 2023, and made his initial appearance on the same date before the Honorable Donna M. Ryu, Chief Magistrate Judge. Dkt. No. 6; PSR ¶ 4. Defendant was ordered released on a $50,000 unsecured bond with U.S. Pretrial Services supervision with special conditions, including a condition that the defendant "have no contact, directly or indirectly, with any co-defendant outside of the presence of counsel. Davis may have contact with Malepeai only to exchange their child." *Id.*

      On August 31, 2023, the Court held a Bail Review hearing for Defendant, during which the government renewed its motion for detention and moved to remand him. Dkt. No. 20; PSR ¶ 4. The

government's motion was based on surveillance evidence showing that Defendant violated his bail conditions following his release, including Defendant showing up at Malepeai's residence in Oakley, California, and departing the residence alone with Malepeai without their child. *Id.* The Court granted the government's motion for detention remanded the Defendant, who had "immediately and blatantly violated" his Court-ordered conditions of release. *Id.*

On September 25, 2023, Defendant filed a motion to reopen bail. Dkt. No. 36; PSR ¶ 4. The government opposed the motion based on evidence that Defendant placed jail calls to Malepeai on several occasions while he was in custody, including by using other inmates' PIN codes to appear as somebody else and directing Malepeai to retrieve "burner" phones to communicate with him. Dkt. No. 37; PSR ¶ 4. On October 30, 2023, the Court denied Defendant's request for release and ordered him to remain in custody. Dkt. No. 48; PSR ¶ 4.

On November 30, 2023, Defendant appealed Chief Judge Ryu's detention order and the Honorable Richard Seeborg, Chief District Judge, denied Defendant's appeal on December 1, 2023. Dkt. Nos. 52, 55; PSR ¶ 4.

On January 17, 2024, Defendant filed a second motion for a bail review, which the government opposed and he ultimately withdrew. Dkt. Nos. 63, 70, 71; PSR ¶ 4.

The government filed an Information on the same charges as the criminal complaint on July 19, 2024. Dkt. No. 110. Defendant waived indictment and pleaded guilty pursuant to a plea agreement on August 1, 2024. *See* Dkt. Nos. 112, 117, 118. Sentencing is set for October 24, 2024. *Id.*

### C.     Criminal History

By age 20, Defendant had been repeatedly arrested for various charges, including sex with a minor three or more years younger (September 2016, Oakley Police Department); threatening with intent to terrorize, obstruction of an officer (February 2017, Contra Costa County Sheriff); and obstruction/resisting an officer (June 2018, Contra Costa County Sheriff).

Since then, Defendant has been arrested in numerous additional incidents involving domestic violence against his codefendant Sene Malepeai and/or illegal firearm possession.

In July 2020, Defendant was arrested by the Oakley Police Department for obstruction/resisting an officer and vandalism following a domestic disturbance involving Malepeai. PSR ¶ 41. After

Defendant was reported breaking windows in the house and yelling at people, he was observed holding a crowbar by officers and attempted to run from them, struggling and resisting arrest. *Id.* After officers placed Defendant inside a patrol vehicle, he kicked the window of the car and caused damage. *Id.*

In February 2021, Defendant was arrested by the Pittsburg Police Department for kidnapping, inflicting corporal injury on cohabitant, carrying a loaded/unregistered handgun, illegally possessing a weapon, and carrying a concealed weapon in vehicle. PSR ¶ 42. After Malepeai (visibly pregnant) entered a store and asked to use the phone, Defendant was observed grabbing her, shoving her outside of a store, and shoving her into his vehicle. *Id.* During a later traffic stop, Malepeai confirmed to officers that she was involved in this domestic violence incident and Defendant was arrested with a backpack containing a firearm. *Id.*

In June 2021, Defendant was arrested by the San Leandro Police Department for possessing a firearm without a serial number, and robbery. PSR ¶ 51.

In July 2021, Defendant was arrested by the San Leandro Police Department for obstruction/resisting an officer and battery following an incident at the police department in which Defendant was yelling and screaming at staff, knocked over a pamphlet stand, resisted arrest by pulling away and kicking his legs, and continued to be combative toward officers. PSR ¶ 43.

Also in July 2021, Defendant was arrested by the BART Police Department after he was observed by police running after Malepeai, then ultimately holding her with his arm around her shoulder/neck area. PSR ¶ 44. Defendant was placed under arrest as he had an active restraining order from Malepeai. *Id.* The arresting officer observed visible injuries on Malepeai's neck area and bruising near her throat, but Malepeai denied domestic violence and declined medical attention. *Id*.

In October 2021, Defendant was arrested by the Alameda County Sheriff's Office for violating a court order to prevent domestic violence, giving false information to a peace officer, and driving with a suspended license following a traffic stop of a vehicle containing Defendant and Malepeai in which Defendant provided a false name while subject to a protective order from Malepeai. PSR ¶ 45.

Despite the above arrests, Defendant's only criminal conviction resulting in any Criminal History Points at this time is a misdemeanor driving conviction following a traffic stop of him and Malepeai in which the arresting officers found a pair of metal knuckles under several bags of marijuana.

With one Criminal History Point, Defendant falls under Criminal History Category I. *See* PSR ¶¶ 38–40.

### D. Guidelines Calculation

The government agrees with the Sentencing Guidelines calculation of the United States Probation Office, which is consistent with the parties' plea agreement. PSR ¶¶ 24–35; 82. The base offense level is 7, pursuant to U.S.S.G. § 2B1.1(a)(1); a two-level increase pursuant to U.S.S.G. § 2B1.1(b)(3) applies because the offense involved theft from the person of another; and a two-level reduction pursuant to U.S.S.G. § 3E1.1(a) applies based on Defendant's Acceptance of Responsibility, resulting in a Total Offense Level of 7. *Id.* An offense level of 7 with a Criminal History Category I yields an advisory sentencing range of 0 to 6 months of imprisonment. PSR ¶ 82.

## III. DISCUSSION

### A. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

## B. Recommendation

The government respectfully recommends that the Court accept the parties' binding plea agreement and impose a sentence of 24 months and a day of imprisonment—well above the Guidelines range of zero to six months of imprisonment and accounting for Defendant's conviction of a violation carrying a consecutive two-year mandatory minimum—followed by three years of supervised release, with an order of $6,290.26 in restitution, based upon a consideration of the Guidelines and 18 U.S.C. § 3553(a) factors.

As an initial matter, the parties' recommended sentence accounts for the nature and circumstances of the offenses in this case—Defendant's commission of fraud, aggravated identity theft, and the underlying conduct were serious crimes that victimized Q.D. and the community at large. Moreover, Defendant's history and characteristics support the parties' recommended sentence. As discussed above, Defendant's criminal history (CHC I for one misdemeanor conviction) understates his history of law enforcement contacts and arrests for domestic violence related to his codefendant and other significant charges that did not result in convictions. Defendant's conduct following his arrest in this case, including his immediate violation of his conditions of pretrial release resulting in his detention by the magistrate judge, also weighs in favor of a meaningful custodial sentence.

The parties also recommend a three-year term of supervised release for Defendant. The government agrees with the conditions recommended in the PSR, including the expanded suspicionless search condition agreed to by the parties to serve the interests of specific deterrence and rehabilitation. In addition, the government recommends that the Court impose Probation's recommended "no contact" condition with codefendant Malepeai, except to exchange their shared children. This condition continues a bond requirement imposed by the magistrate judge prior to Defendant being remanded in this case. Importantly, the recommended condition addresses Defendant's history of domestic violence against Malepeai and restraining orders from her, accounts for Defendant's violative conduct in contacting Malepeai while he was briefly on pretrial release, and accounts for his conduct to circumvent court orders while in custody (placing jail calls to Malepeai using other inmates' PIN codes to appear as somebody else and directing her to retrieve "burner" phones). As this Court is aware, Malepeai has pleaded guilty pursuant to a plea agreement to participate in the LEADS program; all of her conditions

of pretrial release remain in effect, including the no-contact condition with Defendant except to exchange their children, and it would not be appropriate for Defendant to otherwise contact Malepeai while she participates in this program pursuant to those conditions of release.

Finally, these offenses involved a victim, Q.D., and Defendant should be ordered to pay $6,290.26 in restitution to repay the losses caused by his criminal conduct in this case.

## IV.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court accept the parties' binding plea agreement and impose a sentence of 24 months and a day of imprisonment, followed by three years of supervised release with the parties' agreed-upon expanded suspicionless search condition and other conditions recommended in the PSR (including the "no contact" condition with codefendant Malepeai, except to exchange their children), along with an order of restitution for $6,290.26.

DATED:  October 17, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
ERIC CHENG
MOLLY K. PRIEDEMAN
Assistant United States Attorneys